**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>JESSICA L. HOWARD, MARK DODSON, SHARIKA JACKSON, TAYLOR MAYES, RASHAMAN HARPER, DANIELLE FITZPATRICK, and HIGHLAND CREEK APARTMENTS,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      No. 2:13-cv-2650-SHL-cgc |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**ISSUING DECLARATORY JUDGMENT**

Before the Court is Plaintiff's Motion for Summary Judgment, filed June 5, 2014. (ECF No. 46.) Defendants Danielle Fitchpatrick[1] ("Ms. Fitchpatrick") and Taylor Mayes ("Ms. Mayes") were granted an extension of time to file their response and did so on December 8, 2014. (ECF No. 53.) For the following reasons, Plaintiff's Motion is GRANTED.

I.    <u>STATEMENT OF THE CASE</u>

State Farm seeks a declaratory judgment stating that it has no duty to defend or indemnify family members of the holder of a homeowner's insurance policy who were among a group of people accused of assaulting a woman at Highland Park Apartments, 1318 Dove Flight Lane, Memphis, Tenn., on December 23, 2012. (Complaint, ECF No. 1 at ¶¶ 9, 14.)

State Farm issued a homeowner's policy of insurance to Debra B. Boyce-Mayes ("Ms. Boyce-Mayes"), effective October 7, 2012, through October 7, 2013, for her home at 3435

---

[1] Defendant is named in this cause of action as "Fitzpatrick." Her name in the original complaint and in her deposition is listed as "Fitchpatrick."

Feldspar Cove, Memphis, Tenn.  (ECF No. 1-2.)  Ms. Fitchpatrick and Ms. Mayes are Ms. Boyce-Mayes's daughters, and both lived with her at the time of the alleged assault.  (Complaint at ¶ 12.)

Jessica L. Howard ("Ms. Howard") filed suit against Ms. Fitchpatrick, Ms. Mayes, Mark Dodson ("Mr. Dodson"), Rashaman Harper ("Mr. Harper"), Highland Creek Apartments, and Sharika Jackson, Highland Creek Apartments' manager and Rashaman Harper's parent, in the Circuit Court of Shelby County for the Thirtieth Judicial District at Memphis on May 25, 2013.  (ECF No. 1-3.)[2]  In that complaint, Ms. Howard alleged that on December 23, 2012, she visited Mr. Dodson at his residence in the Highland Creek Apartments and ended up in a donnybrook involving him, Ms. Fitchpatrick, Mr. Harper, and Ms. Mayes.  (Id. at 2.)

The altercation started with a verbal confrontation between Mr. Dodson and Ms. Howard.  (Pl.'s Statement of Undisputed Material Facts, ("SUMF"), ECF No. 46-2 at ¶ 5.)  The parties dispute what happened after this initial interaction.  Ms. Howard testified that after she and Mr. Dodson exchanged words, she pushed him on his cheek, and he responded by choking her and putting her in a headlock.  (Id. at ¶¶ 7, 8.)  Ms. Howard alleged that after Mr. Dodson let go of her, she slapped him in the face.  (Id. at ¶ 9.)  Mr. Dodson then put Ms. Howard in another headlock, and Ms. Mayes approached Ms. Howard, put a knife to her cheek and threatened her life.  (Id. at ¶ 11.)  After Mr. Harper took the knife away from Ms. Mayes, Ms. Howard alleges that Ms. Mayes pulled out some of her hair.  (Id. at ¶ 12.)

In their response to Plaintiff's Statement of Undisputed Material Facts ("Def.'s Resp."), ECF No. 53-2), Ms. Fitchpatrick and Ms. Mayes allege that Ms. Howard escalated her argument

---

[2] The state action was captioned Jessica L. Howard v. Mark Dodson, Sharika Jackson (parent), Taylor Mayes, Rashaman Harper, Danielle Fitchpatrick, and the Highland Creek Apts., CT-001329-13, Div. V.

with Mr. Dodson by striking him in the face multiple times, at which point Mr. Dodson grabbed her around the waist in an effort to stop her.  (Id. at ¶¶ 7, 8.)  Ms. Mayes denies brandishing a weapon or pulling Ms. Howard's hair, and alleges that the only contact she had with Ms. Howard was when Ms. Howard slapped her.  (Id. at ¶¶ 11, 12.)

After the initial altercation, Ms. Howard got into her car to drive away, but stopped before she made it out of the parking lot with the intent to fight Ms. Mayes.  (SUMF at ¶ 14.)  Before they exchanged any blows, Ms. Howard returned to her vehicle, and was trying to drive away from the apartment complex's parking lot.  (Id. at ¶ 15.)  In her state-court complaint, Ms. Howard alleged that her ability to get out of the apartment complex was delayed because the gate was slow to open.  (ECF No. 1-3 at 3.)  As she waited for the gate, she alleges that a woman she later discovered to be Ms. Fitchpatrick approached her vehicle and sprayed her in the face with pepper spray.  (Id. at 3-4.)

Ms. Fitchpatrick admitted that she sprayed pepper spray toward Ms. Howard's vehicle while she sat in her car near the parking lot's exit, but claimed it hit Ms. Howard's car, not her face, and was done in an effort to defend herself and her sister.  (Def.'s Resp. at ¶ 15.)  Ms. Fitchpatrick alleged that she thought Ms. Howard was reaching for a weapon inside of her vehicle. (Id. at ¶ 18.)  Ms. Howard alleges that her vision was blurred from the pepper spray as she drove from the parking lot, lost control of her vehicle, collided with a pole, and flipped several times.  (ECF No. 1-3 at 4.)  She blacked out and came to in an ambulance.  (Id.)  She was later determined to have suffered a broken collar bone, a broken rib, several spinal fractures, various lacerations, and multiple bruises.  (Id.)  She alleges that she sustained permanent disfigurement and physical scarring, excruciating pain and suffering, impaired ability to enjoy

3

the normal pleasures of life, loss of income and scholarship opportunities, severe emotional distress and mental anguish, and loss of personal property.  (Id. at 5.)

In her lawsuit, Ms. Howard alleged assault, battery, false imprisonment, conspiracy to harm, and parental liability for the act of a minor against the individually named defendants, and negligence committed by Highland Creek Apartments for having a faulty gate and inadequate security.  (Id. at 6-8.)  She sued the defendants, individually and collectively, for compensatory damages of $750,000, punitive damages, and reasonable expenses from the litigation.  (Id. at 9.)

Ms. Fitchpatrick and Ms. Mayes demanded that State Farm provide a legal defense under Ms. Boyce-Mayes's homeowner's insurance policy and coverage for any losses related to the lawsuit.  (Complaint ¶ 15.)[3]  State Farm filed suit in this Court claiming that, under the terms of the insurance policy, it has no duty to defend or indemnify Ms. Fitchpatrick and Ms. Mayes, or to provide coverage for any other liability arising out of the alleged attack against Ms. Howard. State Farm bases its claim on several provisions within the policy.  First, it claims that the attack on Ms. Howard was intentional, and therefore does not meet the definition of a covered "occurrence" or "accident" as defined by the policy.  Next, it argues that even if the incident qualified as an "occurrence" as defined within the policy, that there is no duty to defend or indemnify Ms. Fitchpatrick and Ms. Mayes because the actions are excluded under the policy's intentional act exclusion.  Because the Court finds that none of the events in question qualify as an occurrence, it need not analyze Plaintiff's latter argument.

II.     PROCEDURAL HISTORY

Plaintiff filed suit on August 22, 2013, in this Court seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.  (ECF No. 1.)  Highland Creek Apartments filed its Answer

---

[3] Following ¶ 13 in Plaintiff's Complaint, the subsequent paragraphs are all misnumbered.  Any reference to ¶ 14 or beyond herein refers to the paragraph as though it were correctly numbered.

on September 19, 2013.  (ECF No. 13.)  Ms. Fitchpatrick and Ms. Mayes filed their Answer on

September 29, 2013.  (ECF No. 22.)  Ms. Howard filed her Answer on November 21, 2013.

(ECF No. 31.)  Mr. Dodson was dismissed from the case by Plaintiff on April 7, 2014.  (ECF No.

46.)  Plaintiff filed the Motion for Summary Judgment presently before the Court on June 5,

2014.  (ECF No. 46.)

III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).  "In considering a motion for summary judgment, [a court] must draw all

reasonable inferences in favor of the nonmoving party."  Phelps v. State Farm Mut. Auto. Ins.

Co., 680 F.3d 725, 730 (6th Cir. 2012) (citing Matsushita Electric Indus. Co. Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986)).

While the court views all evidence and factual inferences in a light most favorable to the

non-moving party, "the mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  The movant has the initial burden of "demonstrat[ing] the absence of a genuine

issue of material fact."  Celotex, 477 U.S. at 323.  The burden then shifts to the non-moving

party to "go beyond the pleadings" and "designate specific facts showing there is a genuine issue

for trial."  Id. at 322.  Ultimately, in evaluating the appropriateness of summary judgment, the

court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
Anderson, 477 U.S. at 251-52.

IV.     JURISDICTION

In this case, State Farm seeks a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, arguing that the Court should declare that Ms. Boyce-Mayes's insurance policy does not obligate it to provide a legal defense for Ms. Fitchpatrick or Ms. Mayes in Ms. Howard's lawsuit, or to indemnify them against any losses sustained as a result.  While none of the Defendants have challenged the propriety of this Court's jurisdiction in the matter, the Court will evaluate the jurisdictional issues before considering the motion for summary judgment.

A district court's jurisdiction is not mandatory under the Declaratory Judgment Act. Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 812 (6th Cir. 2004) (citing Brillhart v. Excess Ins. Co., 316 U.S. 491, 494 (1942)).  There is not a *per se* rule against exercising jurisdiction in insurance-coverage matters, however "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court."  Bituminous Cas. Corp., 373 F.3d at 812-813 (citing Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co., 791 F.2d 460, 463 (6th Cir. 1986)).

The Sixth Circuit generally considers five factors to determine whether a case is appropriate for declaratory judgment: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and

6

improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.  Bituminous Cas. Corp., 373 F.3d at 813 (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000)).

The majority of the five criteria support this matter being appropriately before this Court. A judgment on State Farm's claim would settle the controversy, at least as it pertains to the representation and indemnification issues between the insured and the insurer in the underlying state court issue.  A declaratory judgment that settles the scope of insurance coverage has been held to satisfy the first factor, especially in cases where a state court was not considering the same issue before the federal court.  See West Am. Ins. Co. v. Prewitt, 208 F. App'x 393 (6th Cir. 2006).  But see Travelers Indem. Co. v. Bowling Green Professional Assocs., PLC, 495 F.3d 266, 272 (6th Cir. 2007) (determining "the district court's decision could not settle the controversy in the underlying state court litigation; thus, the first factor favors the court not exercising jurisdiction.")  Declaratory relief from this Court in this action will not settle the ultimate controversy between all of the parties in the state court action.  It would dispose of the dispute between State Farm and Ms. Fitchpatrick and Ms. Mayes, however, while not affecting the substance of the controversy in the state court action.  Because State Farm is not a party to the underlying tort action in state court, and its presence or absence in that court cannot prejudice the parties in that action, the first factor favors the exercise of federal jurisdiction.

Similarly, such a declaratory judgment would also serve a useful purpose in clarifying the legal relationship – specifically clarifying the scope of the insurance coverage – between State Farm and Ms. Fitchpatrick and Ms. Mayes.  The "grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue."  Allstate Ins.

Co. v. Green, 825 F.2d 1061, 1066 (6th Cir. 1987), abrogated on other grounds by Scottsdale Ins. Co., 211 F.3d 964.  A declaratory judgment would settle the legal relationships between State Farm and Ms. Fitchpatrick and Ms. Mayes, therefore the second factor also favors federal jurisdiction.

The third and fourth factors also support federal jurisdiction in this matter, as there is no evidence that State Farm had an improper motive in filing this underlying action, or that a declaratory judgment would somehow increase friction between the federal and state courts, particularly given the fact that the coverage issue is not pending before the state court.  Finally, Tennessee has its own version of the Declaratory Judgment Act, granting its courts the power to declare the rights, statuses, and other legal relations between parties.  Tenn. Code Ann. § 29–14–102.  Under Tenn. Code Ann. § 29–14–103, courts also have the power to construe or determine the validity of any written instrument, statute, ordinance, contract, or franchise, provided that the case is within the court's jurisdiction.  Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 837 (Tenn. 2008).  An argument could be made that this alternative state-based remedy could provide a more efficient means of handling State Farm's pursuit of a declaratory judgment, if State Farm were to intervene in the underlying case or otherwise invoke the state court's jurisdiction.  Even conceding this point, however, the majority of the criteria used in determining the appropriateness of federal declaratory relief point to the issue in this case being appropriately before this Court.  Therefore, this Court has jurisdiction over the matter.

V.    ANALYSIS

Determining whether summary judgment is appropriate hinges on interpreting the homeowner's insurance policy to find out if, under its terms, State Farm has a duty to defend Ms. Fitchpatrick and Ms. Mayes, and whether it has a duty to indemnify them against any losses that

8

result from the underlying lawsuit.  In their Answer to Plaintiff's Complaint, Ms. Fitchpatrick and Ms. Mayes disputed State Farm's interpretation of the relevant portions of the homeowner's insurance policy.

Federal courts have recognized that, under Tennessee law, the substantive law of the state where an insurance policy was issued and delivered will control.  Nelson v. Nelson, 409 S.W.3d 629 (Tenn. 2013) (citing Stakem v. Randolph, 431 F. Supp.2d 782 (E.D. Tenn. 2006); Shupe v. Simcox, No. 1:09–CV–138, 2009 WL 3152810 (E.D. Tenn. Sep. 28, 2009); NGK Metals Corp. v. Nat'l Union Fire Ins. Co., No. 1:04–CV–56, 2005 WL 1115925 (E.D. Tenn. Apr. 29, 2005). Because Ms. Boyce-Mayes's policy was issued in Tennessee to cover real property within the state, Tennessee law applies.

The Court's analysis begins with whether there is a genuine issue of material fact that, under the insurance policy, State Farm has a duty to defend Ms. Fitchpatrick and Ms. Mayes from Ms. Howard's lawsuit.  If the Court finds there is no duty to defend, the issue of indemnification is moot, as the duty to defend is broader than the duty to indemnify.  See Drexel Chemical Co. v. Bituminous Ins. Co., 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996); Jackson Hous. Auth. v. Auto-Owners Ins. Co., 686 S.W.2d 917, 922 (Tenn. Ct. App. 1984).  "Whereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, i.e., ultimate liability, depends rather upon the true facts."  St. Paul Fire and Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (quoting Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co., 373 A.2d 247, 250 (Me.1977)).  Therefore, where an insurer has no duty to defend, "[i]t logically follows . . . there is not duty to indemnify."  Cincinnati Ins. Co. v. Grand Pointe, LLC, 2006 WL 1806014, at *9 (E.D. Tenn. June 29, 2006) (citing Standard Const. Co., Inc. v. Md. Cas. Co., 2002 WL 1477886, at *5 (W.D. Tenn. Apr. 23, 2002)).

9

To make the determination as to whether there is a duty to defend, the Court must evaluate the state court complaint and the express terms of Ms. Boyce-Mayes's insurance policy. "It is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined *solely* by the allegations contained in the complaint in that action." Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994) (emphasis in original) (citing American Policyholders' Ins. Co., 373 A.2d at 249). State Farm has a duty to defend "[i]f even one of the allegations is covered by the policy . . . irrespective of the number of allegations that may be excluded by the policy." Drexel Chem. Co., 933 S.W.2d at 480 (citing U.S. Fidelity & Guar. Co. v. Murray Ohio Manuf. Co., 693 F. Supp. 617 (M.D. Tenn. 1988)).   Unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage," an insurer cannot refuse to defend the policyholder.  Drexel, 933 S.W.2d at 480 (quoting Glen Falls Ins. Co. v. Happy Day Laundry, Inc., 1989 WL 91082 (Tenn. Ct. App. Aug. 14, 1989)).

Like other contracts, insurance contracts "should be construed as to give effect to the intention and express language of the parties." Blaylock and Brown Const., Inc. v. AIU Ins. Co., 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990) (citing Interstate Life & Acc. Ins. Co. v. Gammons, 408 S.W.2d 397 (Tenn. Ct. App. 1966).  When the language of the insurance policy is ambiguous or uncertain, however, those terms must be construed strongly against the insurer and in favor of the insured.  Travelers Ins. Co. v. Aetna Cas. & Sur. Co, 491 S.W.2d 363, 366 (Tenn. 1973).

State Farm highlights three different sections of its insurance agreement with Ms. Boyce-Mayes that it claims absolve it of a duty to defend Ms. Fitchpatrick and Ms. Mayes.  The first is

found in the portion titled "Section II – Liability Coverages." The section titled "Coverage L – Personal Liability" sets forth the following terms:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
> 2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

(ECF No. 50-1 at 18) (emphasis in original).

The terms in bold above, including "occurrence," are defined earlier in the policy. Occurrence is defined as "an accident, including exposure to conditions, which results in: a. **bodily injury**; or b. **property damage**; during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**." (Id. at 5) (emphasis in original).

State Farm argues that the bodily injuries that formed the basis for Ms. Howard's state-court lawsuit in tort cannot be characterized as an "occurrence" under the policy because they were not the result of an "accident," therefore a duty to defend Ms. Fitchpatrick and Ms. Mayes cannot attach. Instead, it argues that the tortious acts of assault and battery are intentional acts that are, by definition, not accidents because they are not unforeseen.

First, turning to the plain language of the policy, while "occurrence" requires the presence of an accident the term "accident" is not defined in the policy. The Tennessee Supreme Court has held that the word "accident," at least in a commercial general liability policy, refers to "an event not reasonably to be foreseen, unexpected and fortuitous." Travelers Indem. Co. of America v. Moore & Associates, Inc., 216 S.W.3d 302, 308 (Tenn. 2007) (quoting Gassaway v.

11

Travelers Ins. Co., 439 S.W.2d 605, 608 (Tenn. 1969).  That definition hews closely to the Black's Law Dictionary definition of accident, which is "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated."  Black's Law Dictionary 16 (9th ed. 2009).[4]  In Gassaway, the court found the term "accident" also included "negligent acts of the insured causing damage which is undesigned and unexpected."  Gassaway, 439 S.W.2d at 607.

Ms. Howard's state-court civil claim for assault and battery is based on the common law, not the criminal statute.  However, "[w]hile the tort of assault is not statutorily based, there is authority for the proposition that 'courts may refer to the statutory definition of the crime in civil actions.'"  Hughes v. Metropolitan Gov't of Nashville and Davidson Cnty., 340 S.W.3d 352, 370 (Tenn. 2011) (citing 6 Am. Jur. 2d Assault & Battery § 85 (2008)).  Tennessee common law, unlike the state's criminal code, recognizes a distinction between assault and battery.  In addition to recognizing separate torts, the common law differs from the criminal statute in the *mens rea* required to prove each.  The Tennessee criminal code defines assault as when a person "(1) intentionally, knowingly or recklessly causes bodily injury to another; (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative."  Tenn. Code Ann. § 39-13-101.

Under the common law, on the other hand, assault is "an attempt or offer, with force or violence, to do a corporal hurt to another, whether wantonly or with a malicious intention, with such circumstances as denote an intention to do it at the time, coupled with the present ability to carry that intention into execution."  Allstate Ins. Co. v. Conner, 1991 WL 46663 at *3 (Tenn.

---

[4] This is the edition of Black's Law Dictionary that was current at the time Ms. Boyce-Mayes's homeowner's insurance policy was issued.

Ct. App. April 8, 1991) (quoting <u>Reese v. State</u>, 457 S.W.2d 877, 881 (Tenn. Crim. App. 1970)).

Battery is the successful termination of the assault.  <u>Allstate</u>, 1991 WL 46663 at *3.  Like

assault, battery under the common law carries with it the element of intent.  The court in <u>Allstate</u>,

relying on the <u>American Jurisprudence</u> definition of battery put forth in <u>Reese</u>, characterized the

offense as "the unlawful touching or striking of the person of another by the aggressor himself or

by any other substance put in motion by him, done with the *intention* of bringing about a harmful

or offensive contact. . . ."  <u>Allstate</u>, 1991 WL 46663 at *3 (emphasis in original).

      Tennessee courts have relied on the criminal code definitions in analyzing civil assault

claims, and none appear to have expanded the *mens rea* required in the civil realm to include

anything other than intentional acts.  It would be possible to find that State Farm would be

required to defend Ms. Fitchpatrick and Ms. Mayes against charges of assault and battery, if

assault and battery under the common law could be committed accidentally – or, more precisely,

with negligence.  There is no precedent in Tennessee for reading the common law so broadly.

Ms. Boyce-Mayes's insurance policy therefore cannot be read to require State Farm to defend

her or any family members covered by her policy against Ms. Howard's assault claim.  The acts

that precipitated those charges cannot be characterized as an "accident" and therefore cannot be

deemed to be an "occurrence" as the insurance policy defines it.  This remains true even if Ms.

Fitchpatrick and Ms. Mayes were acting in self-defense.  "Self-defense" might ultimately serve

to defeat Ms. Howard's claims, but it cannot turn intentional acts into accidental ones.

      While State Farm does not address the conspiracy to harm charge that is directly levied

against Ms. Mayes in Ms. Howard's state-court complaint, and at least obliquely made against

Ms. Fitchpatrick, in the interest of judicial economy, the Court will address it here.  The analysis

of the duty to defend against the conspiracy claim mirrors the analysis of the assault and battery

claims.  That is, because you cannot have an accidental conspiracy, there cannot be a duty to defend against those charges under the terms of Ms. Boyes-Mayes's homeowner's insurance policy.  "An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff."  Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002) (citing Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001)).  Because a conspiracy demands the intent of its participants, it cannot be accidental and therefore cannot qualify as an "occurrence" under Ms. Boyce-Mayes's insurance policy.  State Farm again has no duty to defend Ms. Fitchpatrick or Ms. Mayes against those charges.

Defendant urges the Court to look not necessarily at the legal theories set forth in the state-court complaint – that is, at concepts such as assault and battery and conspiracy to harm – but rather the underlying facts alleged therein.  First, the Court notes that the facts in the state-court complaint fit adequately within the classifications of assault, battery, and conspiracy. In their Response in Opposition to Plaintiff's Motion for Summary Judgment, Ms. Fitchpatrick and Ms. Mayes argue for a broader reading of the state-court complaint as "many of the factual allegations contained within the tort Complaint are based on these Defendants' negligent conduct."  (ECF No. 53-1.)  If the complained of acts by Ms. Fitchpatrick and Ms. Mayes were negligent acts, their argument goes, they would qualify as occurrences, bringing them under the ambit of coverage under the insurance policy.

Focusing on the facts alleged, however, does not establish that Ms. Howard asserted any negligence claims against Ms. Fitchpatrick or Ms. Mayes.  The state-court complaint alleges specific negligent against Highland Park Apartments, namely that it had inadequate security and

a faulty gate.  (ECF No. 1-3 at 8.)  Even in liberally construing the complaint, every act Ms.

Fitchpatrick and Ms. Mayes were alleged to have engaged in involving the fight with Ms.

Howard was intentional.  Defendants argue that Ms. Fitchpatrick's act of spraying the pepper

spray can be characterized as an accidental or negligent action.  They argue that Ms.

Fitchpatrick's spraying of the pepper spray was a reflexive effort to defend herself and that she

was not aiming her mace when she sprayed it.  (Id. at 6.)  In her deposition, Ms. Fitchpatrick

denies actually pepper-spraying Ms. Howard.  (ECF No. 53-4 at 2.)  Instead, she claims to have

sprayed the substance in her direction and hit the back window of her car.  (Id. at 3.)

Ms. Howard's state-court complaint, of course, alleges she was sprayed in the face with

the substance.  But no matter what Ms. Fitchpatrick hit with her pepper spray, to characterize the

action of spraying it toward Ms. Howard as negligent, rather than intentional, is to turn the

definition of intent on its head.  Intent denotes that "that the actor desires to cause consequences

of his act, or that he believes that the consequences are substantially certain to result from it."

Mix v. Miller, 27 S.W.3d 508, 515 (Tenn. Ct. App. 1999) (citing Restatement (Second) of Torts

§ 8A (1965); see also Restatement (Second) of Torts § 8A cmt. B (1965) ("[i]f the actor knows

that the consequences are certain, or substantially certain, to result from his act, and still goes

ahead, he is treated by the law as if he had in fact desired to produce the result.")  Ms.

Fitchpatrick acknowledges spraying the pepper spray in the direction of Ms. Howard's car in an

attempt to scare her.  (ECF No. 53-4 at 2.)  It strains credulity to suggest that Ms. Fitchpatrick

did not know that a substantially certain consequence of her actions would be that Ms. Howard

would end up being hit by the pepper spray.

It is plain from the face of the state-court complaint that the allegations fail to state facts

that bring the case within, or potentially within, the coverage of Ms. Boyce-Mayes's insurance

policy with State Farm.  Because neither the act of pepper spraying Ms. Howard nor any of the other acts by Ms. Fitchpatrick or Ms. Mayes in the underlying complaint allege any acts that could qualify as an occurrence, State Farm cannot be held to be responsible to defend either Defendant under the policy.

As stated previously, the Court's finding that there is no duty to defend Ms. Fitchpatrick and Ms. Mayes under the terms of their mother's insurance policy also rules out a duty for State Farm to indemnify them against any losses related to Ms. Howard's lawsuit.

VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED. Accordingly, the Court hereby declares that State Farm has no duty to defend or indemnify Ms. Fitchpatrick or Ms. Mayes in the lawsuit Ms. Howard filed against them on March 26, 2013, in the Circuit Court of Shelby County for the Thirtieth Judicial District at Memphis, docket number CT-001329-13.

**IT IS SO ORDERED,** this 9th day of December, 2014.

/s/ Sheryl H. Lipman
UNITED STATES DISTRICT JUDGE

16